[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
On September, 1992 the plaintiff, Fidelity and Deposit Company of Maryland (FD), filed a complaint in the Supreme Court of the State of New York in a case entitled Fidelity Deposit Co. v.Altman, Index No. 17866/91, IAS Part 12, Justice Lehner (the "Altman case") to enforce the terms of an Indemnification and Security Agreement (Agreement) bearing the name of the defendant, Andrew Hewitt. The plaintiff claimed jurisdiction over Hewitt, a Connecticut resident, by virtue of language in the Agreement in which Hewitt agreed to the jurisdiction of the New York Court.[1] On February 23, 1993 FD recovered a default judgment against the defendant for damages and costs in the amount of $17,348.74. Thereafter, FD filed this action to enforce the New York judgment.
The defendant, Andrew Hewitt, has filed an Answer, Special Defenses and a Counterclaim in which he admits that the plaintiff obtained a default judgment against him, but denies that the judgment is enforceable because the New York court lacked in personam jurisdiction over him. He further claims that the New York court did not have jurisdiction over him because the Agreement was induced by false material representations and misrepresentations made by Colonial Realty Company (Colonial) of which FD knew or should have known. Hewitt also claims that the New York judgment is unenforceable because he cannot tell if the signature on the Agreement is his signature and because the default judgment violates his rights to due process of law as guaranteed by Article I Section 10 of the Connecticut Constitution. In the Counterclaim Hewitt seeks to have the New York judgment set aside because it was obtained ex parte as the result of excusable neglect.
Summary judgment "shall be rendered forthwith if the CT Page 10258 pleadings, affidavits, and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384;Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11,459 A.2d 115 (1983). To defeat a motion for summary judgment, the nonmoving party must present evidence that demonstrates the existence of some material disputed factual issue. Daily v. New Britain Machine Co.,200 Conn. 562, 568-569, 512 A.2d 893 (1986).
Under Connecticut statutory and common law a creditor has the right to bring an action to enforce a foreign judgment. See
Connecticut General Statutes § 52-607 (1988); Seaboard Surety Co.v. Waterbury, 38 Conn. Sup. 468, 470-471 (1982). "As a matter of federal law, the full faith and credit clause requires a state court to accord to the judgment of another state the same credit, validity and effect as the state that rendered the judgment would give it. Underwriters National Assurance Co. v. North Carolina Life Accident Health Ins. Guaranty Assn., 455 U.S. 691, 704,102 S.Ct. 1357, 71 L.Ed.2d 558 (1982)." Packer Plastics. Inc. v.Laundon, 214 Conn. 52, 56, 570 A.2d 687 (1990). The requirement that a foreign judgment be afforded full faith and credit applies with equal force to default judgments. See Laundon,214 Conn. at 56-57.
A successful collateral attack of a foreign judgment "requires proof of the lack of a legally organized tribunal; lack of jurisdiction over the subject matter, the parties, or both; or want of power to grant the relief contained in the judgment." Rathkopfv. Pearson, 148 Conn. 260, 265, 190 A.2d 135 (1961). In this case the defendant's collateral attack on the New York judgment hinges upon the Agreement, in which Hewitt allegedly consented to the jurisdiction of the New York court and waived his right to assert the New York court's lack of personal jurisdiction as a defense in any action.
Connecticut courts have recognized the validity of agreements in which a party consents to the jurisdiction of a foreign court.United States Trust Co. v. Bohart, 197 Conn. 34, 42, 495 A.2d 1034
(1985); Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App. 495,495 A.2d 286 (1985); Clarkson v. Classic Motor Carriages, No. 310929, 1992 Westlaw 393181 at 2 (Conn.Super. Ct 1992, Fuller, J.)
In Fairfield Lease Corp., supra, the Appellate Court affirmed a judgment rendered by the Superior Court in an action to enforce CT Page 10259 a default judgment rendered by a New York court. Jurisdiction of the New York court over the defendant was based on a forum selection clause in a commercial lease. The Court in FairfieldLease stated:
 Parties to a contract may make it part of their arrangement that disputes arising between them shall be determined by a particular tribunal. The parties may agree `to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether.' National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); see Insurance Corporation of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee, 456 U.S. 694, 703-704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-11, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). When the court selected is reasonably appropriate, and where there is no indication that `the parties had such greatly disproportionate bargaining power that the agreement could be regarded as unconscionable, the tendency is to give effect to such agreements.' James Hazard, Civil Procedure (2d Ed. 1977) 12.21.
4 Conn. App. at 498.
In Clarkson v. Classic Motor Carriages, Inc., supra, the court stated that in the absence of a statute limiting forum selection clauses they are now enforced under a reasonableness test unless one of the following situations exists:
 (1) the choice of foreign provision is unfair or unreasonable; (2) the provision was obtained by fraud, duress, the abuse of economic power or other unconscionable means, which allows consideration whether the provision is contained in an adhesion or take it or leave it contract which the party was compelled to accept without argument or discussion; (3) the courts of the chosen state are closed to the suit or would not handle it effectively or fairly; or (4) the chosen state is so seriously an inconvenient forum that it is unjust to require the plaintiff to bring suit there. Restatement, Conflict of Laws, Sec. 80, comment c.
The United States Supreme Court has also recognized the CT Page 10260 validity of forum selection clauses. See Scherk v. Alberto-CulverCo., 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 279
(1974).
In support of its Motion for Summary Judgment the plaintiff has presented the affidavit of a handwriting expert, Linda J. Hart. In that affidavit Ms. Hart states that she has compared the signature on the Indemnification and Security Agreement with handwriting exemplars of Mr. Hewitt's signature and based on that comparison, the signature on the Agreement is that of Mr. Hewitt. In opposition to the summary judgment, Hewitt has presented his own affidavit in which he states as follows:
 9. The plaintiff relies for jurisdiction in Altman
upon the terms of the Indemnification and Security Agreement claimed to have been signed by me, a copy of which is attached hereto. I have examined the copy of what is claimed to be my signature on said Agreement. I cannot tell if the signature is genuine, and I have so advised the plaintiff.
 10. I did not knowingly sign any document wherein agreed to submit to the jurisdiction of any court. I do not recall signing the Indemnification and Security Agreement. I did not receive copies of any documents I signed in connection with Colonial Constitution Limited Partnership.
In order to defeat a motion for summary judgment, a party must produce admissible evidence which contradicts the evidence produced by the proponent of the motion. S. M. S. Textile v. Brown,Jacobson, etc., P.C., 32 Conn. App. 786, 789-790, 631 A.2d 340
(1993). Thus, if Hewitt denied signing the Agreement, a material issue of fact sufficient to defeat the motion would exist.
The foregoing statements do not constitute evidence which contradicts the affidavit of the handwriting expert that the Agreement was signed by Hewitt.[2] Therefore, those statements are not sufficient to defeat this Motion.
Even though Hewitt has not produced evidence sufficient to contradict the plaintiff's evidence that he signed the Agreement, he could still successfully attack the New York judgment if he could introduce evidence that Agreement was the product of fraud or was unconscionable. Fairfield Lease Corp. v. Romano's AutoCT Page 10261Service, supra; Scherk v. Alberto-Culver Co., supra. "`[T]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case.'Iamartino v. Avallone, 2 Conn. App. 119, 125, 477 A.2d 124 (1984); see Hamm v. Taylor, 180 Conn. 491, 493, 429 A.2d 946 (1980). Superior bargaining power in itself is not enough to strike down a resultant contract as unconscionable. Additional elements must be present, such as, `a lack of meaningful choice as in the case of an industry wide form contract heavily weighted in favor of one party and offered on a take it or leave it basis, or [exploitation] by a stronger party who has control of the negotiations due to the weaker party's ignorance, feebleness, unsophistication as to interest rates or similar business concepts or general naivete.' Calamari Perillo, Contracts (2d Ed.) 9-40, p. 326." FairfieldLease Corp. v. Romano's Auto Service, 4 Conn. App. 495, 499,495 A.2d 286 (1985).
Hewitt's affidavit does not set forth any facts concerning his claims of unconscionability or fraud. It does state: "I had no opportunity to negotiate the terms of the Indemnification and Security Agreement, or any other document I signed in connection with Colonial Constitution Limited Partnership." The foregoing statement is conclusory in nature, does not indicate any factors, such as ignorance, unsophistication, disproportionate bargaining power, lack of a meaningful choice, or any other facts which tend to support the defendant's claim that the Agreement was unconscionable. In his affidavit Hewitt also states, "I never knew that the Plaintiff or any other surety was involved in the transaction until I received demand letters from the Plaintiff after the Colonial fraud was discovered." Although the foregoing does mention the word fraud, it falls far short of presenting any factual basis for the defendant's claims that the Agreement was induced by fraudulent misrepresentations of which FD had knowledge.
"[T]he party opposing the motion [for summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . . The mere presence of an alleged adverse claim is not sufficient to defeat a motion for summary judgment. . . . Rather, the [nonmoving party] must recite specific facts . . . which contradict those stated in the [moving party's] affidavits and documents." S. M. S. Textile v. Brown. Jacobsonetc., P.C., 32 Conn. App. 786, 789-790, 631 A.2d 340 (1993). CT Page 10262
Hewitt's statement that he never "knowingly" signed any Agreement in which he agreed to jurisdiction of the court of another state also fails to raise a material issue of fact. Under the law of this state a person is presumed to know the contents of a document he signs. Fasano v. Meliso, 146 Conn. 496, 152 A.2d 512
(1959).
Hewitt has failed to present evidence sufficient to raise an issue of material fact with respect to the issue of whether Hewitt signed the Agreement or the validity of the forum selection clause of the Agreement. Therefore, the plaintiff is entitled to summary judgment on its complaint and to post-judgment interest, costs and attorneys' fees.
The defendant has filed a counterclaim requesting this court to vacate the New York judgment because his failure to appear in the New York action was the result of "excusable neglect." UnderRathkopf v. Pearson, supra, collateral attack on a foreign judgment is permissible only if it is based on "proof of the lack of a legally organized court or tribunal; lack of jurisdiction over the subject matter, the parties, or both; or want of power to grant the relief contained in the judgment." 148 Conn. at 265. The Counterclaim does not fall within the narrow scope of Rathkopf. Therefore, summary judgment may enter in favor of the plaintiff on the Counterclaim.
By the court, Aurigemma, J.