[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AS TO MOTIONS FOR SUMMARY JUDGMENT AND TO STRIKE
The plaintiff's amended complaint alleges as follows: The plaintiff, Elliot Brothers Steel Co. ("Elliot Brothers"), is a Pennsylvania corporation with its principal place of business in New Castle, Pennsylvania. The defendant, Pelican Industries, Inc. ("Pelican"), is a Connecticut corporation with its principal place of business in New Britain, Connecticut. At all relevant times the plaintiff has been in the business of selling strip steel. On May 8th and 12th 1997, the defendant offered to buy from the plaintiff steel products valued at $9,101.08 and $3,414.84, respectively. The plaintiff accepted the defendant's offer and shipped the steel to the defendant. However, the defendant failed to pay for the delivered steel. As a result, on December 10, 1997, the plaintiff obtained a default judgment ("the foreign judgment"), against the defendant in the Court of Common Pleas of Lawrence County, Pennsylvania in the amount of $12,515.92 To date, the foreign judgment has been wholly unsatisfied.
The plaintiff's amended complaint is in three counts. The plaintiff's first count seeks enforcement of the foreign judgment. In the second count, the plaintiff alleges breach of contract, and in the third count, the plaintiff alleges unjust enrichment.
In response to the plaintiff's amended complaint, the defendant filed an amended answer, special defenses, setoff and counterclaim. The defendant's first special defense, directed only to count one of the plaintiff's amended complaint, alleges that the foreign judgment is void because the Pennsylvania court did not have personal jurisdiction over the defendant. The defendant's second special defense, directed to the second and third counts of the amended complaint, alleges that the plaintiff, and not the defendant, breached an agreement between the parties "by failing to provide promised future cold-rolled steel" in a timely manner. (Def.'s Am. Answer, 2nd Spec. Defense).
The defendant has also alleged that it is entitled, by virtue of the plaintiff's claimed breach, to a setoff of any recovery secured by the plaintiff in this action. Similarly, the defendant CT Page 4805 alleges in its counterclaim that it is entitled to damages arising from the plaintiff's alleged subsequent breach of an agreement for the sale of the steel.
Presently before the court is the plaintiff's motion for partial summary judgment with respect to the first count of the amended complaint. Also before the court is the plaintiff's motion to strike the defendant's second special defense, set-off and counterclaim. Both parties have filed memorandums of law and exhibits in support of their respective arguments.
 I. MOTION FOR SUMMARY JUDGMENT
"Practice Book § [17-49] provides that rendition of a summary judgment is appropriate if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Millerv. United Technologies Corp., 233 Conn. 732, 755-52, 660 A.2d 810
(1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such, issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). The genuine issue aspect of summary judgment procedure requires that, prior to trial, the parties provide the court with evidentiary facts, or substantial evidence outside of the pleadings from which the material facts alleged in the pleadings can be inferred. Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578-79,573 A.2d 699 (1990); United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 378-79, 260 A.2d 596 (1969). "In deciding motions for summary judgment, the trial court is obliged to construe the evidence in the light most favorable to the nonmoving party. . . . The test to be applied would be whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) Gabriellev. Hospital of St. Raphael, 33 Conn. App. 378, 382-83,635 A.2d 1232, cert. denied, 228 Conn. 928, 640 A.2d 115 (1994). "A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . ." Ciarelli v. Romeo, 46 Conn. App. 277, 282,699 A.2d 217, cert. denied, 243 Conn. 929, 701 A.2d 651 (1997); see also Mullen v. Horton, 46 Conn. App. 759, 763, 700 A.2d 1377
(1997) (directed verdict rendered only where, on the evidence viewed in light most favorable to nonmovant, trier of fact could CT Page 4806 not reasonably reach any other conclusion than that embodied in the verdict as directed).
The plaintiff argues that it is entitled to summary judgment with respect to the first count of the amended complaint because there are no genuine issues of material fact as to whether the Pennsylvania court properly exercised personal jurisdiction over the defendant. Specifically, the plaintiff argues that under Pennsylvania law the defendant's contacts with Pennsylvania, which were primarily in the form of an ongoing business relationship with the plaintiff, were sufficient to establish long-arm jurisdiction over the defendant. The plaintiff also argues that the defendant had the requisite "minimum contacts" with the forum state of Pennsylvania to satisfy the requirements of due process. Therefore, the plaintiff argues, the foreign judgment is valid and given the Full Faith Credit Clause of the federal Constitution, the plaintiff is entitled to summary judgment with respect to the first count of the amended complaint as a matter of law.
The defendant raises two arguments in opposition to the plaintiff's motion for partial summary judgment. First, the defendant argues that a number of Connecticut superior court decisions have held that summary judgment is inappropriate in actions for the enforcement of a foreign judgment where the defendant has raised as a defense a claimed lack of personal jurisdiction.
Alternatively, the defendant argues that under Pennsylvania law, "minimum contacts" were not established with Pennsylvania simply by the existence of the contract between the parties. Moreover, the defendant argues that questions of fact exist as to whether the defendant had sufficient other contacts with Pennsylvania such that the Pennsylvania court properly exercised personal jurisdiction over the defendant. Therefore, the defendant argues that the motion for partial summary judgment must be denied.[1]
A foreign judgment may be attacked collaterally through a demonstration that the foreign judgment is void, and not merely voidable. Rathkopf v. Pearson, 148 Conn. 260, 265, 170 A.2d 135
(1961). "Broadly stated, this would require proof of the lack of a legally organized court or tribunal; lack of jurisdiction over the subject matter, the parties, or both; or want of power to grant the relief contained in the judgment." Rathkopf v. Pearson,
CT Page 4807 supra, 148 Conn. 265; G E Enterprises v. Automart, Inc.,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 293170 (May 20, 1993, Ballen, J.) (when plaintiff asserts action to collect on foreign judgment, debtor has right to collaterally attack foreign judgment by establishing facts that would render judgment void). Here, the defendant asserts that the Pennsylvania court lacked personal jurisdiction over the defendant.
The court rejects the defendant's argument that a claimed lack of personal jurisdiction automatically precludes a summary judgment to enforce a foreign judgment. Connecticut law allows the court to look beyond a defendant's mere claim to ascertain if a genuine issue of material fact exists as to personal jurisdiction and, if there is none, to enforce a foreign judgment. Rathkopf v. Pearson, supra, 148 Conn. 264. Accordingly, the court turns to the question of whether there is such a genuine issue of material fact.
It is well established that "issues regarding the jurisdiction of a foreign court are determined by the law of the foreign state." Tri-State Tank Corp. v. Higganum Heating, Inc.,45 Conn. App. 798, 800, 699 A.2d 201 (1997); Smith v. Smith,174 Conn. 434, 438, 389 A.2d 756 (1978). Therefore, this court will look to Pennsylvania substantive law in its analysis of whether the Pennsylvania court properly exercised personal jurisdiction over the defendant.
Under Pennsylvania law, "[a] Pennsylvania court can exercisein personam jurisdiction over a non-resident if the following two criteria are satisfied: (1) jurisdiction is conferred by [the] state's long-arm statute; and (2) the exercise of jurisdiction under the long-arm statute does not offend the constitutional standards of due process." Insulations v. Journeyman Welding Fab, 700 A.2d 530, 531 (Pa.Super. 1997). Appropriately then, this court will begin its analysis with Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322.
"Under Pennsylvania's long-arm statute, 42 Pa.C.S. § 5322(b), the courts are permitted to exercise personal jurisdiction over non-resident defendant's to the constitutional limits of the due process clause of the fourteenth amendment." National PaintballSupply, Inc. v. Cossio, 996 F. Sup. 459, 461 (E.D.Pa. 1998).[2]
"Pennsylvania's long arm statute provides that its reach is co-extensive with the limits placed on the states by the federal CT Page 4808 Constitution. We therefore look to federal constitutional doctrine to determine [the defendant's] susceptibility to personal jurisdiction in Pennsylvania." (Internal quotation marks omitted.)Feinberg, Inc. Central Asia Capital Corp., 936 F. Sup. 250,256 (E.D.Pa. 1996). Here, because Pennsylvania's long-arm statute is co-extensive with the reach of the Due Process Clause of the federal Constitution, if the "minimum contacts" requirements of due process are satisfied, then the Pennsylvania long-arm statute is also satisfied.
"In order to exercise specific jurisdiction without offending the Due Process Clause of the Fourteenth Amendment, the court employs a two prong test. First, the defendant must have made constitutionally sufficient minimum contacts with the forum. . . . [Second], jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with traditional notion of fair play and substantial justice." (Internal quotation marks omitted.) National Paintball Supply,Inc. v. Cossio, supra, 996 F. Sup. 461; International Shoe Co. v.Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95
(1945); Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342,85 L.Ed.2d 278 (1940). "In evaluating whether minimum contacts exist, the Court must determine whether the defendant has purposefully directed its activities toward residents of the forum. There must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." (Internal quotation marks omitted.) Feinberg, Inc.Central Asia Capital Corp., supra, 936 F. Sup. 256; NationalPaintball Supply, Inc. v. Cossio, supra, 996 F. Sup. 461; AsahiMetal Industry Co., Ltd. v. Superior Court of California,480 U.S. 102, 108, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987).
Furthermore, with regard to breach of contract actions, the United States Supreme Court has directed lower courts to "evaluate prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts with the forum state." (Internal quotation marks omitted.) MickleburghMachinery v. Pacific Economy Dev., supra, 738 F. Sup. 162; BurgerKing v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184,85 L.Ed.2d 528 (1985). Finally, courts may take into account "the relationship among the forum, the defendant and the litigation," in order to ascertain whether the defendant had sufficient CT Page 4809 minimum contacts with the forum state. Keeton v. HustlerMagazine, Inc., 465 U.S. 770, 775, 104 S.Ct. 1473, 1478,79 L.Ed.2d 790 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186,204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).
Here, after careful review of the parties' affidavits and exhibits, the court finds that the defendant had sufficient minimum contacts with the forum state of Pennsylvania such that the Pennsylvania court properly exercised personal jurisdiction over the defendant. The record shows that since October of 1995, the plaintiff had made approximately eleven sales of strip steel to the defendant for use in the defendant's business. (Pl.'s Aff't ¶ 5.) The defendant offers no evidence to dispute the existence of this ongoing business relationship over a period of several years between the parties. This is in no way the situation where "the mere entrance of a non-resident defendant into a [single] contract with a Pennsylvania corporation does not bring the defendant within the jurisdiction of the Pennsylvania court," Strick Corp. v. A.J.F. Warehouse Distributors, Inc.,532 F. Sup. 951 (E.D.Pa. 1982).
While the defendant's president states in his affidavit that the plaintiff shipped all of its steel to the defendant F.O.B., New Britain, it is uncontested that the two shipments of steel at issue here were ordered by defendant directly from plaintiff, which evidences the defendant's intent to purposefully enter into an agreement with the Pennsylvania corporation; and as such, the defendant purposefully availed itself of the privilege of doing business in Pennsylvania. See Mickleburgh Machinery v. PacificEconomy Dev., supra, 738 F. Sup. 162 (initiation and continuation of contact with forum state sufficient to satisfy minimum contacts requirement).
The defendant has not offered any relevant evidence that would contradict the plaintiff's proper use of documentation in support its motion for summary judgment. See Maffucci v. RoyalPark Ltd. Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998) (mere assertion insufficient to establish existence of material fact and cannot refute evidence properly presented in support of motion for summary judgment). Instead it has relied upon a conclusory characterization of the parties ongoing relationship as "intermittent", and a conclusory opinion that it did not subject itself to Pennsylvania jurisdiction, each of which is insufficient to raise a genuine issue of material fact with respect to the issue of minimum contacts. See United Oil Co. v.CT Page 4810Urban Redevelopment Commission, 158 Conn. 364, 377, 260 A.2d 596
(1969) (mere statements of legal conclusions not sufficient to raise genuine issue of material fact).
For all of the above reasons, a sufficiently ongoing and continuous business relationship existed between the parties such that the defendant should have anticipated that it could have been haled into court in Pennsylvania. See North Penn Gas Companyv. Corning Natural Gas Corp., 897 F.2d 687, 691 (3rd Cir.), cert. denied, 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 1283 (1990) (continuous and ongoing relationship between parties sufficient to bestow personal jurisdiction on court.) Consequently, the court finds that the defendant had sufficient minimum contacts with Pennsylvania so as to support the Pennsylvania courts exercise of personal jurisdiction.
The court must next determine whether the Pennsylvania courts exercise of personal jurisdiction over the defendant offended traditional notions of fair play and substantial justice. "Once the court finds that [the plaintiff] has shown minimum contacts exist to warrant exercising in personam jurisdiction, [the defendant] may still prevail by presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (Internal quotation marks omitted.)Feinberg, Inc. Central Asia Capital Corp., supra, 936 F. Sup. 258;Mellon Bank (East) PSFS, Nat. Ass'n v. Farino,960 F.2d 1217, 1226 (3rd Cir. 1992).
Here, the defendant has not argued in its memorandum in opposition to the motion for partial summary judgment that the exercise of jurisdiction in this action would be unreasonable. This court, upon review of the applicable principles of law, finds that the exercise of personal jurisdiction over the defendant was entirely appropriate and not burdensome.
There is no evidence before the court that the defendant was burdened by the exercise of personal jurisdiction, or that the entering of judgment against the defendant was disruptive of the shared interests of both Pennsylvania and Connecticut in furthering substantive social policies. See Asahi Metal IndustryCo., Ltd. v. Superior Court of California, 480 U.S. 102, 113-14,107 S. Ct 1026, 1032-33, 94 L.Ed.2d 92 (1987). The exercise of personal jurisdiction over the defendant advanced both Pennsylvania's interest in protecting the plaintiff Pennsylvania corporation, and also the plaintiff's interest in securing CT Page 4811 convenient and effective relief Asahi Metal Industry Co. Ltd. v.Superior Court of California, supra, 480 U.S. 113-14. Accordingly, this court finds that the Pennsylvania court's exercise of personal jurisdiction over the defendant was consonant with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310,316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
This court finds that the Pennsylvania court properly exercised personal jurisdiction over the defendant, and the foreign judgment is valid and unsatisfied. As such, under the Full Faith Credit Clause of the federal Constitution, the plaintiff is entitled to summary judgment as to the first count of the amended complaint. "[T]he full faith and credit clause requires a state court to accord to the judgment of another state the same credit, validity and effect as the state that rendered the judgment would give it." Packer Plastics, Inc. v. Laundon,214 Conn. 52, 56, 570 A.2d 687 (1990).
Further, the defendant has failed to offer any evidence or documentation that would support the existence of a valid set-off to the foreign judgment. Accordingly, there is no genuine issue of material fact that the plaintiff is entitled to recover the precise amount stated in the foreign judgment. The plaintiff's motion for partial summary judgment as to Count One is granted in the amount of $12,515.92.
 II. AS TO THE MOTION TO STRIKE The Second Special Defense
The plaintiff has moved to strike the defendant's second special defense on the ground that it does not assert a defense to counts two or three of the amended complaint. Specifically, the plaintiff argues that the second special defense alleges only that the plaintiff breached an agreement with the defendant by failing to provide future shipments of cold-rolled steel. (Pl.'s Mem. Supp. Strike p. 2.) The second special defense does not address, however, the defendant's failure to pay for the steel it had already received nor even that order and those deliveries. Plaintiff claims that because the second special defense is not directed at claims alleged in the amended complaint, the second special defense must be stricken.[3]
"The motion to strike . . . replaced the demurrer in our CT Page 4812 practice. Its function, like that which the demurrer served, is to test the legal sufficiency of a pleading." (Citation omitted; internal quotation marks omitted.) RK Constructors, Inc. v. FuscoCorp., 231 Conn. 381, 384, 650 A.2d 153 (1994). "A motion to strike is the proper manner in which to raise the issue of the legal sufficiency of a special defense to a cause of action."Passini v. Decker, 39 Conn. Sup. 20, 21, 467 A.2d 442 (1983).
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp., 240 Conn. 576,580, 693 A.2d 293 (1997). "Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Knight v. F.L. Roberts Co., 241 Conn. 466, 471, 696 A.2d 1249 (1997).
Practice Book § 10-50 provides in relevant part: "No facts may be proved under either a general or special denial except as show that the plaintiff's statements of fact are untrue. Factswhich are consistent with such statements but show, notwithstanding,that the plaintiff has no cause of action, must be speciallyalleged." (Emphasis added.)
Here, the second count of the plaintiff's amended complaint alleges that on May 8th and 12th, 1997, the defendant offered to buy from the plaintiff steel for $9,101.08 and $3,414.84, respectively. (Pl.'s Am. Cmplt ¶ 4.) The plaintiff thereafter agreed to sell the steel to the defendant. (Pl.'s Am. Cmplt ¶ 5.) The plaintiff then sent the steel to the defendant, but the defendant breached the contract by not paying for the steel it had received. (Pl.'s Am. Cmplt ¶ 6, 7.)
The defendant's second special defense, directed to both the second and third counts of the amended complaint, alleges a breach by plaintiff "by failing to provide promised future cold-rolled steel to the [d]efendant in a timely manner. . . ." (Def's Am. Answer, 2nd Spec. Def.)
The second special defense does not allege facts which are consistent with the plaintiff's allegations, yet demonstrate that the plaintiff has "no cause of action." See Practice Book §10-50. Rather, the special defense alleges the existence, and breach, of an agreement between the parties for the future
shipment of cold-rolled steel. That allegation, however, does not demonstrate that the plaintiff has no "cause of action" against CT Page 4813 the defendant for the payment of the steel that the defendant had already received. This special defense is legally insufficient, and the motion to strike is granted.
 The Set-off
The plaintiff has moved to strike the defendant's set-off with regard to the first count of the amended complaint on the ground that a set-off may not be used to collaterally attack a foreign judgment. Specifically, the plaintiff argues that since a set-off is a special defense, it serves only to reduce the amount of the plaintiff's foreign judgment and cannot render the foreign judgment void. Therefore, because the only permissible defense to a foreign judgment is to demonstrate that the judgment itself is void, the defendant has no right to set-off the foreign judgment.
The defendant argues in opposition to the motion to strike that a set-off may be asserted as a defense in an action to enforce a foreign judgment. Specifically, the defendant argues that General Statutes § 52-139(a) provides that a debt may be set-off "in any action," and therefore, the set-off in this action is proper. Additionally, the defendant argues that under Connecticut law, it has an equitable right to assert the set-off. Furthermore, the defendant argues that to permit the set-off in this action would be to serve the policy of the law to prevent unnecessary litigation. Therefore, the defendant argues that the motion to strike must be denied.
"The law of set-off is governed by General Statutes §52-139(a), the relevant portion of which provides that `[i]n any action brought for the recovery of a debt, if there are mutual debts between the plaintiff . . . and the defendant . . . one debt may be set-off against the other.' A condition precedent to the application of § 52-139 is that the defendant's claim arise from a debt due by the plaintiff." (Internal quotation marks omitted.) Hope's Architectural Products, Inc. v. Fox Steel Co.,44 Conn App. 759, 762, 692 A.2d 829 (1997). Here, the defendant's claim arises from an alleged debt due by the plaintiff; specifically, the defendant alleges that the plaintiff has breached its agreement with the defendant for the sale of cold-rolled steel. (Def.'s Am. Answer, Set-off ¶¶ 1, 4, 11.) Therefore, the condition precedent has been met.
Moreover, contrary to the plaintiff's argument, the Connecticut Supreme Court has recognized the right of a defendant CT Page 4814 to assert a set-off against a claim arising from a foreign judgment, provided that the defendant affirmatively plead the set-off. See Peters Production, Inc. v. Dawson, 182 Conn. 526,528, 438 A.2d 747 (1980) (right to set-off foreign judgment must be affirmatively raised); G E Enterprises v. Automart, Inc.,
supra, Superior Court, Docket No. 293170 (plaintiff's motion to strike denied as defendant's set-off to plaintiff's claim on foreign judgment affirmatively pled). The defendant has affirmatively pled its set-off, and it is legally sufficient.[4] Accordingly, the plaintiff's motion to strike the set-off is denied.
 Counterclaim
The plaintiff next argues that the defendant's counterclaim must be stricken because it does not arise from the same "transaction" as alleged in the second and third counts of the amended complaint. Thus, the counterclaim is legally insufficient.
The defendant argues in opposition to the motion to strike that the counterclaim is based upon an agreement which underlies the plaintiff's claims alleged in the second and third counts of the amended complaint. Specifically, the defendant argues that this underlying agreement envisioned a course of dealing between the parties that exceeded a single act of order and delivery; and therefore, the plaintiff's claims are only single instances of the defendant's alleged breach within the overall agreement. Consequently, the defendant argues that since the defendant's counterclaim arises from this underlying agreement between the parties, the counterclaim satisfies the "transaction" test.
Practice Book § 10-10 provides that "[i]n any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of transactions which is the subject of the plaintiff's complaint." The purposes underlying Practice Book § 10-10 are "judicial economy, avoidance of multiplicity of litigation and avoidance of piecemeal disposition of what is essentially one action. . . ."Wallingford v. Glen Valley Associates, Inc., 190 Conn. 158, 161,459 A.2d 525 (1983). "In determining whether claims made in a complaint and counterclaim are essentially "one action, a court must consider whether substantial duplication of effort would result if each claim was tried separately." Bristol Savings BankCT Page 4815v. Millers Chevrolet, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 514407 (October 19, 1992, Aurigemma, J.) (counterclaim stricken because allegations that plaintiff breached agreements which both pre-dated and post-dated plaintiff's contract claim held not to satisfy transaction test).
Presently, there is no allegation in either the second or third counts of the plaintiff's amended complaint that an underlying agreement existed between the parties for the continuous sale of steel.[5] To the contrary, the second count alleges in eight short paragraphs that the defendant failed to pay for steel it ordered from the plaintiff on May 8th and 12th, 1997; and as a result, the plaintiff alleges that the defendant breached its contract with the plaintiff. (Pl.'s Am. Cmplt ¶¶ 4-7.)
It is the defendant's counterclaim, not the plaintiff's amended complaint, that alleges a continuous and ongoing agreement between the parties. (Def.'s Am. Answer, Counterclaim ¶¶ 3-7, 10-12.) The allegations of the defendant's counterclaim allege that the plaintiff breached its contract with the defendant by not delivering timely cold*-steel to the defendant, even though the parties had agreed that the plaintiff would always have on hand sufficient steel to meet the demands of the defendant. (Def.'s Am. Answer, Counterclaim ¶ 7.)
It is only when a claim arises out of the same transaction as described in the plaintiff's complaint that it can properly be alleged as a counterclaim. Northwestern Electric, Inc. v.Rozbicki, 6 Conn. App. 417, 426, 505 A.2d 750 (1986); SavingsBank of New London v. Santaniello, 130 Conn. 206, 211,33 A.2d 126 (1943); Peters Production, Inc. v. Dawson, supra,182 Conn. 528. Here, the allegations of the counterclaim do not arise out of the same transaction as alleged in the amended complaint, and a substantial duplication of effort would not result if the counterclaim was tried separately from the plaintiff's claim. Therefore, the plaintiff's motion to strike the counterclaim is granted.
 CONCLUSION
The plaintiff's motion for summary judgment upon the first count of the amended complaint is granted and judgment will enter upon such count in the amount of $12,515.92, with costs. The CT Page 4816 plaintiff's motion to strike the defendant's second special defense and counterclaim is also granted. The plaintiff's motion to strike the defendant's set-off is denied.
It is so ordered.
James T. Graham Superior Court Judge